Case 4:18-cv-01434 Document 82 Filed on 04/19/19 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
April 19, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAYEOLA JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1434 |
| | § | |
| TEXAS A&M UNIVERSITY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant Texas A&M University's ("TAMU") Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 57). The court has considered the motion, the response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that TAMU's motion be **GRANTED**.

### I. Case Background

Plaintiff filed this civil rights action on May 4, 2018, against TAMU, Easterwood Airport Management, LLC, and four related rental-car companies (collectively, "Avis") based on the alleged discriminatory treatment and refusal to fulfill a reservation for the rental of a vehicle.[2] Plaintiff has since amended the

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 5, Ord. Dated May 21, 2018.

[2] See Doc. 1, Orig. Compl.

complaint three times.[3] By the third amendment, filed on November 5, 2018, Plaintiff had named two individuals to the original list of defendants.[4]

Avis maintains a rental counter inside Easterwood Airport, which is owned by TAMU.[5] Regarding TAMU's ownership and relationship to the other defendants, Plaintiff alleged:

> Upon information and belief, [Easterwood] Airport is managed under the direct supervision and control of TAMU by Easterwood [Airport Management], LLC. Upon information and belief, Avis leases retail space at the Airport from TAMU and/or Easterwood [Airport Management], LLC. Upon information and belief, Avis[,] Easterwood [Airport Management], LLC[,] and TAMU all maintain control over the actions of the security guards that work at [Easterwood] Airport. Upon information and belief, Avis[,] Easterwood [Airport Management], LLC[,] and TAMU control access to [Easterwood] Airport.[6]

In May 2016, Plaintiff, an African-American amputee, contracted with Avis to rent a vehicle.[7] When Plaintiff approached the Avis counter to pick up the rented vehicle, an Avis employee "immediately met [Plaintiff] with derision and ridicule—especially making fun of [Plaintiff's] physical handicap (i.e.[,] her amputation)."[8] The employee refused to fulfill Plaintiff's

---

[3] See Doc. 21, 1st Am. Compl.; Doc. 39, 2d Am. Compl.; Doc. 56, 3rd Am. Compl.

[4] See Doc. 56, 3d Am. Compl.

[5] See id. p. 3.

[6] Id.

[7] See id.

[8] Id. p. 4.

2

reservation and ordered Plaintiff to leave the premises.[9]

Plaintiff "quietly and pleasantly persisted in requesting that Avis provide her the vehicle."[10] However, the employee responded with wholly unacceptable and highly offensive comments directed at Plaintiff based on her race.[11] The employee ultimately summoned a security guard, who escorted Plaintiff from the premises.[12]

Against TAMU, Plaintiff brought claims pursuant to 42 U.S.C. § 1981 ("Section 1981") for discriminatory conduct based solely on her race that impaired her right to contract and pursuant to 42 U.S.C. § 1983 ("Section 1983") for depriving Plaintiff of her rights under Section 1981 and the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.[13] Plaintiff sought actual, consequential, economic, and punitive damages, as well as attorney's fees, costs, and pre- and post-judgment interest.[14]

On November 9, 2018, TAMU filed the pending motion to dismiss the third amended complaint, arguing that Plaintiff's claims against it should be dismissed for: (1) lack of subject matter jurisdiction because TAMU is entitled to Eleventh Amendment

---

[9] See id.

[10] Id.

[11] See id.

[12] See id.

[13] See id. pp. 6-8.

[14] See id. p. 10.

3

immunity; and (2) failure to state a claim.[15] The court begins and ends with consideration of the former argument.[16]

## II. Dismissal Standard

Dismissal of an action is appropriate if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3). The party asserting jurisdiction bears the burden of overcoming the presumption that the action falls outside the court's limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

State sovereign immunity pursuant to the Eleventh Amendment[17] "operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n, 662 F.3d 336, 340 (5th Cir. 2011)(citing cases). However, Eleventh Amendment immunity is waivable, and, thus, "enacts a sovereign immunity from suit, rather than a nonwaivable limit on [federal] subject-matter jurisdiction." Id. (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997)).

---

[15] See Doc. 57, TAMU's Mot. to Dismiss Pl.'s 3d Am. Compl.

[16] TAMU also argues that Plaintiff's claim for punitive damages is barred against TAMU. See id. p. 22. The court does not reach that argument, but, regardless, Plaintiff concedes the point. See Doc. 58, Pl.'s Resp. to TAMU's Mot. to Dismiss Pl.'s 3d Am. Compl. p. 3.

[17] The Fifth Circuit recently noted, "While state sovereign immunity is sometimes described as Eleventh Amendment immunity, the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex., 898 F.3d 497, 501 (5th Cir. 2018)(internal quotation marks omitted)(quoting Alden v. Maine, 527 U.S. 706, 711 (1999)).

### III. Analysis

State sovereign immunity bars suits for money damages brought in federal court against a state by private citizens unless the state specifically waives its immunity through unequivocal consent to suit or Congress, in enacting a particular statute, "clearly and validly abrogated the state's sovereign immunity." U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex. [hereinafter, U.S. Oil Recovery Site PRPG], 898 F.3d 497, 501 (5th Cir. 2018)(quoting Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002)); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). "State sovereign immunity protects not only states from suit in federal court, but also 'arms of the state.'" U.S. Oil Recovery Site PRPG, 898 F.3d at 501 (citing Richardson v. S. Univ., 118 F.3d 450, 452-54 (5th Cir. 1997)). The determination whether TAMU is entitled to sovereign immunity is a question of law for the court to answer. See id. at 500.

Plaintiff acknowledges both that Congress did not abrogate the state's sovereign immunity in enacting Section 1981 or Section 1983 and that courts have found TAMU entitled to state sovereign immunity.[18] Rather than present legal authority to show that TAMU is not an arm of the state entitled to state sovereign immunity,

---

[18] See Doc. 58, Pl.'s Resp. to TAMU's Mot. to Dismiss Pl.'s 3d Am. Compl. pp. 5, 7 (citing Gay Student Servs. v. Tex. A&M Univ., 737 F.2d 1317, 1333 (5th Cir. 1984); Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981)).

Plaintiff argues that TAMU *should not* receive the benefit of state sovereign immunity because it "has transitioned from a wholly public institution into a large entity that maintains vast private assets independent of the state."[19] Plaintiff explains:

> TAMU has ventured outside its ordinary role as a public university, has acquired vast private assets, and, independent of the state, has entered into a proprietary relationship with the other named Defendants, and committed race discrimination within that context. Under these circumstances, where TAMU acts as a quasi-private entity while engaging in racial discrimination, TAMU is no longer an arm of the state and sovereign immunity does not apply.[20]

Elsewhere in her brief, Plaintiff states this argument in slightly different words:

> Because TAMU acted autonomously from the state in this conduct and receives substantial proceeds from its private venture with the other Defendants, TAMU has condescended to suit and voluntarily abrogated its immunity by becoming a hybrid public-private entity and by engaging in racial discrimination in its commercial activity.[21]

While Plaintiff's position may be gaining currency as recognized arms of the state venture more frequently into private, commercial activity, her argument does not comport with current law. A recent district court case acknowledged this commercialization trend and stated, "[T]his Court is not unsympathetic to the reasoning behind the argument that once a

---

[19] Id. p. 1.

[20] Id. pp. 3-4.

[21] Id. p. 2.

State leaves the realm of performing traditional state functions and enters the commercial marketplace, it should be treated just like any other commercial entity and that the failure to do so leads to results that are less than uniform." Can. Hockey LLC, et al. v. Tex. A&M Univ. Athletic Dep't, et al., Civ. Action No. H-17-181, at pp. 16-17 (S.D. Tex. Mar. 29, 2019)(internal footnote omitted). That case also acknowledged that resolving the resulting disparities "is beyond the province of a district court which is not only bound by the demands of the Constitution, but also by controlling Circuit precedent." Id. at p. 17.

Fifth Circuit precedent is what stands in Plaintiff's way in this case. U.S. Oil Recovery Site PRPG, a case in which TAMU was a defendant, succinctly and plainly stated, "Under our precedent, the universities . . . at issue here are arms of the state." U.S. Oil Recovery Site PRPG, 898 F.3d at 501. The Fifth Circuit did not stop its analysis there, stating that "[e]ven if this question were not answered by our precedent we would have little trouble concluding that the agencies and universities at issue here are arms of the state under the test set out in Clark v. Tarrant County, 798 F.2d 736, 744-45 (5th Cir. 1986)." U.S. Oil Recovery Site PRPG, 898 F.3d at 502 (citing Williams v. Dall. Area Rapid Transit, 242 F.3d 315, 318 (5th Cir. 2001)). The court proceeded to find that the state universities that were defendants in that case satisfied four of the six factors identified in Clark as the

test for determining whether a government entity is an arm of the state.[22] See id. Furthermore, the court rejected the argument "that sovereign immunity does not protect an arm of the state when it engages in 'proprietary functions,'" declining the opportunity to find that an arm of the state may assert sovereign immunity only as to certain claims but not others. Id.

Bound by that precedent, this court cannot entertain Plaintiff's invitation to create an additional exception to state sovereign immunity. Plaintiff's framing of TAMU's commercial activities as voluntary abrogation of its sovereign immunity does not avoid the Fifth Circuit's rejection of a claim-by-claim determination of the entitlement to sovereign immunity. Only by the state's unequivocal consent to suit or Congress's clear and valid abrogation of state sovereign immunity can a state lose that protection. See id. at 501. TAMU's commercial activities are neither.

TAMU is an arm of the state entitled to sovereign immunity in this case as in every case where one of the above, recognized exceptions does not apply.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that TAMU's motion to dismiss be **GRANTED**.

---

[22] The Fifth Circuit did not specifically mention the other two factors. See U.S. Oil Recovery Site PRPG, 898 F.3d at 502.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 19th day of April, 2019.

Nancy K. Johnson
United States Magistrate Judge