United States District Court
Southern District of Texas

**ENTERED**

February 26, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAYEOLA JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1434 |
| | § | |
| TEXAS A&M UNIVERSITY, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are: (1) Defendants Easterwood Airport Management LLC ("Easterwood") and Travis Sheppard's ("Sheppard") Motion for Final Summary Judgment (Doc. 68); (2) Defendant Chase Isaac's ("Isaac") Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 96); (3) Defendant Checker Leasing, Inc.'s[2] ("Checker") First Amended Motion for Summary Judgment (Doc. 104); and (4) Defendants Avis Budget Group, Inc., Avis Budget Car Rental, LLC, and Avis Rent A Car System, LLC's (collectively "Avis") First Amended Motion for Summary Judgment (Doc. 105). The court has considered the motions, the responses, all other relevant filings, the summary judgment evidence, and the applicable law.

For the reasons set forth below, the court **RECOMMENDS** that:

---

[1]   This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 5, Ord. Dated May 21, 2018.

[2]   The text of the motion states that it was filed by Defendant Checker and Defendants Avis Budget Group, Inc., Avis Budget Car Rental, LLC, and Avis Rent A Car System, LLC, (collectively "Avis").  See Doc. 104, Def. Checker's 1st Am. Mot. for Summ. J. pp. 1, 10.  The court presumes this to be an error as the docket entry notation indicates that Defendant Checker filed the motion and Defendant Avis filed a first amended motion separately.

(1) Defendants Easterwood and Sheppard's Motion for Summary Judgment be **GRANTED**; (2) Defendant Isaac's Motion to Dismiss Plaintiff's Third Amended Complaint be **GRANTED**; (3) Defendant Checker's First Amended Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART**; and (4) Defendant Avis' First Amended Motion for Summary Judgment be **GRANTED.**

Also pending is Defendants Easterwood and Sheppard's Objection and Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 77). The objection is **OVERRULED** and the motion to strike is **DENIED.**

## I.  Case Background[3]

Plaintiff filed this civil rights action against Texas A&M University ("TAMU") and Defendants Easterwood, Sheppard, Isaac, Checker, and Avis based on the alleged discriminatory treatment and refusal to fulfill a reservation for the rental of a vehicle.[4]

## A.  **Factual Background**[5]

Defendant Avis Rent a Car Systems, LLC, licensed independent

---

[3]     Some of the procedural and factual information can be found in more than one record location. When the information is consistent in the summary judgment evidence, the court cites to only one record location. When additional sources contribute inconsistent or distinct information, the court cites all evidence upon which a statement relies.

[4]     See Doc. 1, Orig. Compl.

[5]     In the court's best efforts, the court weaves a chronological account of the incident at issue from multiple record evidence that is not entirely consistent on content and chronology. Regardless of degree of success in presenting a precise account, the court presents the evidence in a light most favorable to Plaintiff and includes all material facts.

rental companies to operate under the Avis' trade name.[6]   The licensees purchased and maintained the vehicles that they rented to customers.[7]   Through a series of assignments, Avis Rent a Car System, Inc.,[8] licensed Defendant Checker's operation of a rental-car business at Easterwood Airport.[9]

Pursuant to that license agreement, Defendant Checker "was responsible for staffing, managing and operating the location within the Easterwood Airport on a day-to-day basis, without any direct supervision from any of the Avis Defendants."[10] Additionally, Defendant Checker retained "the right of control over the hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of their employees" at Easterwood Airport, including staffing, setting pay, assigning shifts, providing workers' compensation and liability

---

[6]   See Doc. 105-4, Ex. D to Def. Avis' 1st Am. Mot. for Summ. J., Aff. of James Brown ("Brown") p. 2.

[7]   See id. p. 2.

[8]   Avis Rent a Car System, Inc., is not a named defendant. However, a Certificate of Conversion issued by the Delaware Secretary of State indicates that Avis Rent a Car System, Inc., was converted into Avis Rent a Car System, LLC, a named defendant, in 2006. See Doc. 106, Ex. A to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for Summ. J., Del. Certificate of Conversion.

[9]   See Doc. 105-1, Ex. A to Def. Avis' 1st Am. Mot. for Summ. J., Exclusive License Agreement; Doc. 105-2, Ex. B to Def. Avis' 1st Am. Mot. for Summ. J., 1972 Agreement of Assignment & Assumption; Doc. 105-3, Ex. C to Def. Avis' 1st Am. Mot. for Summ. J., 1991 Agreement of Assignment and Assumption; Doc. 105-4, Ex. D to Def. Avis' 1st Am. Mot. for Summ. J., Aff. of Brown p. 2.

[10]   Doc. 105-4, Ex. D to Def. Avis' 1st Am. Mot. for Summ. J., Aff. of Brown p. 2.

insurance.[11]  Defendant Avis did not employ Defendant Isaac and was not involved in Defendant Checker's employment of Defendant Isaac.[12] The  Exclusive  License  Agreement  specifically  stated  that  the licensee was not an agent or representative of Defendant Avis Rent a Car System, LLC, "for any purpose whatsoever."[13]  Defendant Avis was not leasing retail space at Easterwood Airport on the date of the incident underlying this suit.[14]

At approximately 8:30 p.m. on May 6, 2016, Plaintiff, a sixty-three-year-old, disabled, African-American woman, arrived at a car rental counter in Easterwood Airport to pick up a vehicle pursuant to  a  prior  reservation.[15]   In  a  rude  manner,  Defendant  Isaac informed Plaintiff that he could not locate a reservation and that no rental car was available.[16]  Plaintiff persisted but Defendant

---

[11]     Id.

[12]     See id. p. 3.

[13]     Doc. 105-1, Ex. A to Def. Avis' 1st Am. Mot. for Summ. J., Exclusive License Agreement p. 10.

[14]     See Doc. 105-4, Ex. D to Def. Avis' 1st Am. Mot. for Summ. J., Aff. of Brown p. 3; Doc. 105-5, Ex. E to Def. Avis' 1st Am. Mot. for Summ. J., Rental Car Concession Agreement & Premises Lease but see Doc. 68-1, Ex. 2 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Decl. of Ryan Clements ("Clements") p. 1.

[15]     See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 4; Doc. 68-1, Ex. 3 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Defendant Checker's 1st Set of Interrogs. p. 3; Doc. 68-1, Ex. 4 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Statement of Mereby Green p. 1. The court notes that the statement of Green is unsworn and, therefore, incompetent summary judgment evidence.  However, no party objected, and the statement could be made into admissible form.

[16]     See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 4; Doc. 68-1, Ex. 4 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Statement of

Isaac interrupted and, in a raised voice, insisted that no vehicle was available.[17]  Defendant Isaac stated, "You people don't get it."[18]  Plaintiff asked what he meant; in response to which, Defendant "Isaac continued to yell and rant, stating that 'you hood rat n*****s don't understand anything!'"[19]

After Plaintiff and a friend who had accompanied her responded by saying no one like that was there, Plaintiff asked to speak with a manager.[20]  Defendant Isaac responded that no manager was present and added, "[I]f they were here, who do you think they would believe?  You or me?!  So it don't matter!"[21]  Defendant Isaac was then able to locate the reservation paperwork and informed Plaintiff "I do see now you did reserve a car, but I still have no car for you."[22]  Defendant Isaac, again rudely, said, "You are two and a half hours late."[23]  Plaintiff explained that she had spoken

---

Mereby Green p. 1.

[17]    See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 4; Doc. 68-1, Ex. 4 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Statement of Mereby Green p. 1.

[18]    Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 4.

[19]    Id.

[20]    See id.

[21]    Id.

[22]    Id.

[23]    Doc. 68-1, Ex. 4 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Statement of Mereby Green p. 1.

with another employee and arranged to arrive late.[24]  At some point during the encounter, Defendant Isaac offered a recently returned vehicle "as is"[25] and asked the attendant at the neighboring car rental counter whether she had a vehicle available (which she did not).[26]

Defendant Isaac informed Plaintiff that he intended to call security, and Plaintiff agreed that he should.[27]  Defendant Isaac walked toward the entrance of the airport and pointed at Plaintiff and "[her] friend (who ha[d] only one arm)[,] saying 'you with your arm and her with one leg . . . get out of here.'"[28]  Plaintiff said that she was not leaving until she was able to speak to a manager and file a complaint about Defendant Isaac's rude behavior.[29]  Plaintiff later testified that she did not wish to leave until she also obtained a rental car.[30]  Plaintiff did not expressly tell

---

[24]     See id.

[25]     At her deposition, Plaintiff denied that Defendant Isaac made this offer.  See Doc. 106, Ex. I to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for Summ. J., Dep. of Pl. p. 102.

[26]     See Doc. 68-1, Ex. 4 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Statement of Mereby Green p. 1.

[27]     See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. pp. 4-5.

[28]     Id. p. 5.

[29]     See Doc. 68-1, Ex. 4 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Statement of Mereby Green p. 1.

[30]     See Doc. 75-1, Ex. A to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Aff. of Pl. p. 2 (unnumbered).

anyone that she did not want to leave the airport.[31]

Defendant Sheppard, the security guard, heard his name being yelled by Defendant Isaac and heard him screaming, "[W]here is the f***ing security guard[?]"[32] Plaintiff greeted Defendant Sheppard when he arrived at the scene, and he asked Plaintiff what the problem was.[33] Plaintiff responded, "Travis [sic], you know I've been coming here to rent cars from Budget Avis for over 15 plus years, and never have I encountered the rudeness I have this evening!"[34]

Defendant Isaac ordered Defendant Sheppard to remove Plaintiff and her friend from the property.[35] "As [Defendant Sheppard] tried to get the situation under control by speaking with [Plaintiff], [Defendant Isaac] continued to yell that he [was not] a racist for calling her a 'hood rat' because he ha[d] a black brother and sister."[36] Defendant Isaac "rant[ed] on and on about the car's unavailability when [Defendant Sheppard] told [Defendant Isaac]

---

[31]     See Doc. 106, Ex. I to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for Summ. J., Dep. of Pl. p. 173.

[32]     Doc. 75-2, Ex. B to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Easterwood Airport Sec. Incident Report.

[33]     See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 3.

[34]     Id.

[35]     See Doc. 75-2, Ex. B to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Easterwood Airport Sec. Incident Report.

[36]     Id.

'Calm down!'"[37]   Attempting to quiet Defendant Isaac, Defendant Sheppard indicated that Defendant Isaac's "statements were not helping the situation."[38]

Plaintiff thanked Defendant Sheppard.[39]   After listening to Plaintiff's account of the altercation with Defendant Isaac, Defendant Sheppard "immediately . . . began to apologize for the rudeness and inconvenience caused by [Defendant] Isaac."[40] Defendant Isaac "continued ranting" and said that he wanted Plaintiff and her friend removed from the airport.[41]   Defendant Sheppard "repeatedly apologized" for Defendant Isaac's actions.[42]

Despite the apologies, Defendant Sheppard informed Plaintiff that she would not be able to rent a vehicle at that time because Defendant Isaac was refusing service and the other car rental company did not have a vehicle available.[43]   Defendant Sheppard told Plaintiff that she would have to return the following day, when

---

[37]     Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 3.

[38]     Doc. 68-1, Ex. 4 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Statement of Mereby Green p. 1.

[39]     See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 4.

[40]     Id. p. 3.

[41]     Id.

[42]     Id. p. 4.

[43]     See id. p. 3; Doc. 75-2, Ex. B to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Easterwood Airport Sec. Incident Report.

someone in management would be available, to file a complaint.[44] Based on her report to Defendant Sheppard about Defendant Isaac's behavior, Plaintiff later reflected, she expected Defendant Sheppard to intervene, call additional law enforcement, and/or contact a manager to address the situation.[45]

During the discussion between Defendant Sheppard and Plaintiff, Defendant Isaac walked in front of Plaintiff's friend, "taunting him about his missing arm."[46] The friend responded, "I'll whoop your ass with one arm boy[,]" and Defendant Isaac retorted, "I'll take those odds."[47] According to the incident report, Defendant Sheppard believed that the two men were nearing a physical altercation and immediately asked Plaintiff and her friend to leave.[48]

Defendant Sheppard then asked Plaintiff to "to allow him to assist [her] in getting back to the vehicle [she] rode in with [her] friend."[49] However, according to Plaintiff, Defendant

---

[44]    See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 4; Doc. 75-1, Ex. A to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Aff. of Pl. p. 2 (unnumbered).

[45]    See Doc. 75-1, Ex. A to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Aff. of Pl. p. 2 (unnumbered).

[46]    Doc. 75-2, Ex. B to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Easterwood Airport Sec. Incident Report.

[47]    Id.

[48]    See id.

[49]    Doc. 68-1, Ex. 3 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Checker's 1st Set of Interrogs. p. 5; see also Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s

Sheppard did not obtain Plaintiff's permission to escort her out of
the airport; Plaintiff only permitted him to "help escort [her] to
the vehicle after he had already made it clear that [she] would
have to leave the airport."[50]   As they left the rental counter,
Defendant Isaac continued to taunt her and her friend.[51]   Before
Plaintiff and her friend departed, Defendant "Sheppard apologized
once again for [Defendant] Isaac's behavior[, and Plaintiff] again
thanked [Defendant Sheppard] and told him that [she] would call
management the following day."[52]

According to Plaintiff, Defendant Isaac contacted Plaintiff by
phone two days after the incident, but Plaintiff recognized his
voice and did not converse with him.[53]   Denise Kerr ("Kerr"),
another employee of the rental car company, contacted Plaintiff a
"couple days later" and apologized.[54]   Kerr informed Plaintiff that
Defendant Isaac had been terminated.[55]   Within a few weeks of the
incident, an attorney then representing Plaintiff sent an email to

---

Resps. to Def. Easterwood's 1st Set of Interrogs. p. 4.

[50]    Doc. 75-1, Ex. A to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot.
for Final Summ. J., Aff. of Pl. p. 2 (unnumbered).

[51]    See id.

[52]    Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final
Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 4.

[53]    See Doc. 106, Ex. I to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for
Summ. J., Dep. of Pl. p. 31.

[54]    Doc. 75-1, Ex. A to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot.
for Final Summ. J., Aff. of Pl. p. 2 (unnumbered).

[55]    See Doc. 106, Ex. I to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for
Summ. J., Dep. of Pl. p. 31.

Ryan Clements ("Clements"), Defendant Easterwood's director of security, commending Defendant Sheppard for his kindness and helpfulness toward Plaintiff and her friend.[56]

**B.   Procedural Background**

On May 4, 2018, Plaintiff filed this action, naming only TAMU, Easterwood, Checker, and Avis as defendants.[57]   Plaintiff alleged objectionable conduct on the part of an employee of Defendant Avis and an airport security guard but did not name them or assert any cause of action against them.[58]   Against all of the entities named as defendants, Plaintiff asserted three causes of action: (1) false imprisonment; (2) violation of 42 U.S.C. § ("Section") 1981; and (3) violation of Section 1983.[59]   Plaintiff sought "actual damages, consequential damages, economic damages, mental anguish, and emotional distress."[60]

On June 26, 2018, Plaintiff added Sheppard and Isaac as defendants, asserting only the Section 1983 claim against them and dropping the other defendants from that claim.[61]   Plaintiff amended

---

[56]     See Doc. 68-1, Ex. 2 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Decl. of Clements p. 1; Doc. 68-1, Ex. 2-B to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Email from Bill Jones to Clements Dated May 28, 2016.

[57]     See Doc. 1, Orig. Compl.

[58]     See id.

[59]     See id. pp. 5-9.

[60]     Id. p. 9.

[61]     See Doc. 21, 1st Am. Compl.

twice more, on August 14, 2018, and November 5, 2018, making changes only to the causes of action alleged against TAMU.[62]  To be clear, the live pleading asserted the following claims: (1) false imprisonment against Defendants Easterwood, Checker, and Avis;[63] (2) violations of Section 1981 against TAMU and Defendants Easterwood, Checker, and Avis; (3) constitutional violations pursuant to Section 1983 against TAMU and Defendants Isaac and Sheppard.[64]

In the course of litigation, Plaintiff produced initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1).[65]  As damage calculations, Plaintiff listed actual, consequential, and/or economic damages, as well as punitive damages, interest, attorneys' fees, and court costs.[66]  Plaintiff indicated that the total amount for each category was unknown at the time and that she would supplement her disclosures.[67]

Plaintiff provided no additional computational information about damages in her responses to Defendants Easterwood's or Checker's interrogatories, but stated that she believed she was

---

[62]     See Doc. 39, 2d Am. Compl.; Doc. 56, 3d Am. Compl.

[63]     In the live pleading, Plaintiff referred collectively to Defendants Checker and Avis as "Avis."  See Doc. 56, 3d Am. Compl. p. 1.

[64]     See id. pp. 5-9.

[65]     See Doc. 68-1, Ex. 5 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Initial Disclosures.

[66]     See id. p. 4.

[67]     See id.

entitled to $2,000,000.[68]   She added that, as a result of the incident, she suffered mental anguish and emotional distress that manifested "at different times or in certain encounters with people" when she found herself fearful that she would be "treated as inhumanely and cruelly" as she had been on that occasion.[69] However, Plaintiff explained that she had "been unable to see a psychiatrist or psychologist because multiple medical professionals [had] refused to treat [her] for fear that the incident might be involved in litigation."[70]   Plaintiff reported that she was "gathering medical documents from [her] primary care physician and other treating doctors" and committed to supplementing her responses.[71]

On November 9, 2018, TAMU filed a motion to dismiss the claims alleged against it in the third amended complaint.[72]   The court granted the motion based on TAMU's entitlement to sovereign immunity.[73]

---

[68]      See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. pp. 7-8; Doc. 68-1, Ex. 3 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Checker's 1st Set of Interrogs. p. 6.

[69]      Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 7.

[70]      Id. p. 8.

[71]      Doc. 68-1, Ex. 3 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Checker's 1st Set of Interrogs. p. 5.

[72]      See Doc. 57, TAMU's Mot. to Dismiss Pl.'s 3d Am. Compl.

[73]      See Doc. 82, Mem. & Recom. Dated Apr. 19, 2019; Doc. 90, Ord. Adopting Mem. & Recom. Dated May 23, 2019.

On March 5, 2019, Defendants Easterwood and Sheppard filed their pending motion for summary judgment.[74]   On June 7, 2019, Defendant Isaac filed his pending motion to dismiss.[75]   On June 14, 2019, Defendants Easterwood and Sheppard supplemented their motion for summary judgment with excerpts from Plaintiff's deposition, which was held on May 13, 2019.[76]   On August 23, 2019, Defendants Checker and Avis, in separate motions, amended previously filed motions for summary judgment.[77]   All motions are briefed and ready for court consideration.

## II.  Applicable Legal Standards

Both the dismissal standard and the summary judgment standard guide the court's review of the pending dispositive motions.

### 1.  **Dismissal Standard**

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Shaw v. Villanueva, 918 F.3d 414, 416 (5th Cir. 2019)(quoting Heaney v. U.S. Veterans Admin., 756 F.2d 1215, 1217 (5th Cir. 1985)).  A complaint need not contain "detailed factual

---

[74]   See Doc. 68, Defs. Easterwood & Sheppard's Mot. for Summ. J.

[75]   See Doc. 96, Def. Isaac's Mot. to Dismiss Pl.'s 3rd Am. Compl.

[76]   See Doc. 99, Defs. Easterwood & Sheppard's Suppl. to Summ. J. Rec.

[77]   See Doc. 104, Def. Checker's 1st Am. Mot. for Summ. J.; Doc. 105, Def. Avis' 1st Am. Mot. for Summ. J.

allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### 2.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Nall v. BNSF Ry. Co., 917 F.3d 335, 340 (5th Cir. 2019). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. See

Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 505 (5th Cir. 2014)(quoting Celotex Corp., 477 U.S. at 323). The movant may meet this burden by making the allegation that the nonmovant has failed to produce evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017).

If the movant carries its burden, the burden shifts to the nonmovant who may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  See Coastal Agric. Supply, Inc., 759 F.3d at 505 (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)). The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor.  Id. (quoting Anderson, 477 U.S. at 255).

However, conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  If the evidence taken as a whole could not lead a reasonable jury to decide the dispute in favor of the nonmovant, "there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); Coastal Agricultural Supply, Inc., 759 F.3d at 504 (same).  "When

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380.

### III. Analysis

The pending motions cover a variety of legal and factual issues, overlapping in part. Collectively, Defendants contend that all claims against all Defendants fail. The court begins with Defendant Isaac's motion to dismiss and then proceeds through the other Defendants' motions for summary judgment on an issue-by-issue basis.

### A. __Defendant Isaac's Motion to Dismiss__

Defendant Isaac moves for dismissal of the Section 1983 claim alleged against him, arguing that it is time barred.[78] Misinterpreting the Federal Rules of Civil Procedure, Plaintiff argues that the claim relates back to the date of her Original Complaint.

As applied in this case, the limitations period for the Section 1983 claim against Defendant Isaac is two years. See Winzer v. Kaufman Cty., 916 F.3d 464, 470 (5th Cir. 2019)(citing Whitt v. Stephens Cty., 529 F.3d 278, 282 (5th Cir. 2008)). Federal

---

[78]   Defendant Isaac also argues that Plaintiff failed to allege a claim for relief pursuant to Section 1983. For the reasons stated in this section, the court need not reach that issue.

Rule of Civil Procedure 15(c)(1) explains when an amendment relates back:

> (A)  the law that provides the applicable statute of limitations allows relation back;
>
> (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to set out--in the original pleading; or
>
> (C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The Fifth Circuit explained the application of Rule 15(c)(1) to an amendment filed after the expiration of the limitations period that named, for the first time, certain individuals as defendants:

> When a plaintiff adds a defendant after the limitations period has run, [Federal] Rule [of Civil Procedure ("Rule")] 15(c) allows the plaintiff to relate the claims filed against the new defendant back to the date of the original filing.  To do so, the plaintiff must show both that the added defendant received adequate notice of the original lawsuit and that the defendant knew that, but for a mistake concerning the identity of the defendant, the action would have originally been brought against the defendant.  Rule 15(c) is meant to correct a *mistake* concerning the identity of the party.  Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.

18

<u>Winzer</u>, 916 F.3d at 470 (internal citations & quotation marks omitted)(quoting in part <u>Jacobsen v. Osborne</u>, 133 F.3d 315, 321 (5th Cir. 1998)).

In <u>Winzer</u>, the Fifth Circuit held that the claims against the newly added defendants were time barred, stating that Rule 15(c) does not allow relation back when parties are first named after the limitations period even when the amendment is intended to replace individuals previously named "unknown officers" or "John Does."[79] See <u>id.</u> at 470-71.  Rather, Rule 15(c) allows relation back only when the amendment changes the party or the naming of the party against whom a claim has been asserted due to a mistake concerning the proper party's identity.  See Fed. R. Civ. P. 15(c); <u>Winzer</u>, 916 F.3d at 471.  "Failing to identify individual defendants cannot be characterized as a mistake."  <u>Id.</u>  (quoting <u>Jacobsen</u>, 133 F.3d at 321)(alteration marks omitted).

Here, Plaintiff filed her Original Complaint on May 4, 2018, two days within the two-year limitations period.  However, Plaintiff did not name Defendant Isaac as a defendant.  In fact, Plaintiff named no individual defendant and asserted no causes of action against individuals *until* she filed her First Amended Complaint on June 26, 2018, about seven weeks after the expiration of the limitations period.  It was in that amended complaint that

---

[79]     In that case, the original pleading named "unknown state troopers" and "unknown paramedics[,]" as defendants and a consolidated pleading named no individual defendant.  See <u>Winzer</u>, 916 F.3d at 469.

Plaintiff first raised a Section 1983 claim against Defendant Isaac. Plaintiff does not dispute that the amendment was filed outside the limitations period for the Section 1983 claim but, rather, argues that the amendment should relate back to May 4, 2018, the date on which Plaintiff first filed the complaint.

The court agrees with Defendant Isaac that Plaintiff's Section 1983 claim against does not relate back. As in <u>Winzer</u>, no individual defendant was named until after the expiration of the limitations period. Rule 15(c) cannot save the untimely filed Section 1983 claim against Defendant Isaac. As the only claim asserted against Defendant Isaac is barred by limitations, he should be dismissed from this lawsuit.

## B. <u>Motions for Summary Judgment</u>

The predominant theme of Defendants' motions for summary judgment is that Plaintiff fails to provide evidence of one or more elements of each of the claims for which she bears the burden of proof. Contrary to Plaintiff's misconception regarding federal summary judgment practice,[80] demonstrating that no evidence supports one or more elements is, in fact, a legitimate summary judgment argument in federal cases. <u>See</u> <u>Austin</u>, 864 F.3d at 335 ("Under federal law, . . . it has long been the rule that when the

---

[80]    Plaintiff argues in more than one brief "that the concept of a 'no evidence' summary judgment does not apply in federal court." <u>See, e.g.,</u> Doc. 75, Pl.'s Resp. to Defendants Easterwood & Sheppard's Mot. for Final Summ. J. p. 4 (citing <u>Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.</u>, 404 F. Supp.2d 942, 948 (S.D. Tex. 2005)).

nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case."). The Fifth Circuit has dispelled the notion argued by Plaintiff that a defendant must "conclusively negate" a plaintiff's claims on summary judgment.[81] See Pioneer Expl., L.L.C. v. Steadfast Ins. Co., 767 F.3d 503, 511 (5th Cir. 2014)(citing Boudreaux, 402 F.3d at 540).

### 1. False Imprisonment

Under Texas law, false imprisonment consists of three elements: "(1) willful detention; (2) without consent; and (3) without authority of law." Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002); see also Davila v. United States, 713 F.3d 248, 262 (5th Cir. 2013). "A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another." Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644-45 (Tex. 1995).

In the case of an alleged detention effected by threat, "the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a just fear of injury to her person, reputation, or property." Id. at 645. The question is not whether Plaintiff feared injury but whether her fear was just.

---

[81]     Id.

Hernandez v. Lasko Prods., Inc., No. 3:11-cv-1967-M, 2012 WL 4757898, at *8 (N.D. Tex. Oct. 5, 2012)(unpublished). Factors to consider in deciding whether a threat is sufficient to override an individual's free will include "the relative size, age, experience, sex, and physical demeanor of the participants[.]" Fojtik v. Charter Med. Corp., 985 S.W.2d 625, 629 (Tex. App. Corpus Christi-Edinburg 1999, writ denied).

Plaintiff alleged that Defendants Checker and Avis, through the actions of Defendant Isaac, and Defendant Easterwood, through the actions of Defendant Sheppard, falsely imprisoned her. Plaintiff variously described her theory of false imprisonment as: (1) being removed from the airport against her will; (2) restraining her liberty to remain in the airport; (3) restraining her from free movement within the airport; (4) directing her movements away from the airport premises where she wished to remain in order to speak with a manager and to obtain a rental vehicle; and (5) intentionally restricting her liberty to remain in the airport.[82]  The court, however, agrees with Defendants Easterwood

---

[82]    See Doc. 56, 3ᵈ Am. Compl. p. 5; Doc. 101, Pl.'s Resp. to Defs. Easterwood & Sheppard's Suppl. to Summ. J. Rec. p. 5; Doc. 107, Pl.'s Resp. to Def. Checker's 1ˢᵗ Am. Mot. for Summ. J. pp. 2, 9.
        Through attorney argument, Plaintiff adds that Defendants Isaac and Sheppard detained her "at the rental counter by keeping her there and limiting her movement in the airport until she understood that she had no option but to leave the premises." See Doc. 101, Pl.'s Resp. to Defs. Easterwood & Sheppard's Suppl. to Summ. J. Rec. p. 5. This theory is unsupported by evidence that either man detained her at the counter as Plaintiff's own testimony that both of them were taking steps to encourage her to leave the airport.  The theory also contradicts her testimony that her goal was to remain in the airport until she was able to speak with management and rent a vehicle.

and Checker that Plaintiff has failed to produce any evidence of willful detention.

No evidence suggests that either Defendant Isaac or Sheppard detained Plaintiff by any means. To the contrary, the video evidence and Plaintiff's own statements demonstrate that, although she now claims to have wished to remain at the airport, Plaintiff left of her own free will. Cf. Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011)(citing Scott, 550 U.S. at 380-81)("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."). The video evidence shows Plaintiff ambulating with an assistive device on her own accord with neither Defendant Isaac nor Sheppard physically forcing her to leave or impeding her progress.[83] The video does not reveal any intimidating body language by Defendant Sheppard, any physical effort to force or restrict her mobility, or any instance in which either Defendant Isaac or Sheppard touched her.[84]

Moreover, Plaintiff testified that she felt free to leave during the entire encounter with Defendant Isaac and that Defendant

---

[83]    See Doc. 68-1, Ex. 2-A to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Link to Sec. Camera Footage Dated May 6, 2016.

[84]    See id. The video did not capture the entire journey from the car rental counter out of the airport, but Plaintiff does not allege that Defendant Sheppard physically detained her at any point.

Isaac made no physical contact with her.[85]  Other than Defendant
Sheppard's physical contact in escorting her, Plaintiff admitted
that he did not touch her.[86]  She further admitted that she "could
have walked away at any time," that she did not inform anyone that
she wished to remain at the airport, and that she left of her own
free will even though she did not want to leave.[87]  In response to
interrogatories, Plaintiff described Defendant Sheppard's efforts
to "detain and/or restrain" her as "ask[ing] a question concerning
the altercation transpiring between [Defendant] Isaac and [her and]
. . . then escort[ing] [her] to the parking lot."[88]  Her deposition
testimony bolstered the absence of any threat in his actions,
stating that Defendant Sheppard did not physically threaten her to
force her out of the building and did not ever raise his voice to
her.[89]  Rather, Plaintiff explained, Defendant Sheppard offered his
arm as in "escorting [someone] to a prom" and offered, "Let me help
you to your vehicle."[90]

     In her affidavit, Plaintiff characterized her lack of

---

[85]     See Doc. 106, Ex. I to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for
Summ. J., Dep. of Pl. pp. 97, 111.

[86]     See id. pp. 39, 117.

[87]     Id. p. 38; see also id. pp. 97, 118, 131, 172-73.

[88]     Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final
Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 3.

[89]     See Doc. 106, Ex. I to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for
Summ. J., Dep. of Pl. pp. 117-18.

[90]     Id. at 116-17; see also id. pp. 39-40.

resistance in leaving as based on "[Defendant] Sheppard['s] assert[ing] himself as the security guard and as the authority figure in the situation[.]"[91]   Now, through attorney argument, Plaintiff embellishes that testimony by claiming that she was vulnerable in oppressive circumstances as a "63-three-year-old African-American woman receiving instruction from . . . a much taller white male security guard who stepped in as a law enforcement authority figure at the request of [Defendant] Isaac, the employee who exhibited extreme racial animosity toward [Plaintiff]."[92]

Yet, Plaintiff's account of her interaction with Defendant Sheppard reflects neither her vulnerability nor any oppressive circumstances.  The suggestion that Plaintiff was vulnerable due to size, age, and gender differences between her and Defendant Sheppard is belied by her admitting she was familiar with him from prior visits to the airport, addressing him by his first name, accepting his escort, acknowledging his apologies for Defendant Isaac's behavior, and thanking him for his efforts to subdue Defendant Isaac.   In this regard, Plaintiff's self-described actions at the time and subsequent testimony negate any inference that the fear of injury she now may claim was just.

---

[91]    Doc. 75-1, Ex. A to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Aff. of Pl. p. 2 (unnumbered).

[92]    Doc. 75, Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J. p. 7.

After considering the video, Plaintiff's testimony, and all other summary judgment evidence, the court finds that the record fails to raise a fact issue on willful detention.   Defendants Easterwood, Checker, and Avis[93] are entitled to summary judgment on the claim of false imprisonment.

## 2.  **Interference with a Contract**

Section 1981 assures the rights of making and enforcing contracts, suing, being a party, giving evidence, and having the full and equal benefit of all laws and proceedings for the security of persons.  See 42 U.S.C. § 1981(a).  In order to support a claim under Section 1981, a plaintiff must produce evidence demonstrating that:  1) she is a member of a racial minority; 2) the defendant intentionally discriminated against her because of her race; and 3) the discrimination touched upon one or more of the activities protected by the statute.  Body by Cook, Inc. v. State Farm Mut. Auto. Ins., 869 F.3d 381, 386 (5th Cir. 2017).  "[W]hen a merchant denies service or outright refuses to engage in business with a consumer attempting to contract with the merchant, that is a violation of [Section] 1981." Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 290 (5th Cir. 2004).

---

[93]   Defendant Avis did not move for summary judgment on the merits of Plaintiff's claim of false imprisonment but, rather, argued that it cannot be held liable for Defendant Isaac's actions for other reasons, including the lack of an agency relationship, which is discussed in a subsequent section of this memorandum.  Regardless, because Plaintiff cannot maintain a false-imprisonment claim against Defendant Checker, she cannot impose derivative liability on Defendant Avis.

Plaintiff alleged that Defendants Checker and Avis, through the actions of their employee Defendant Isaac, and Defendant Easterwood, through the actions of its employee Defendant Sheppard, violated Section 1981 by refusing to enter a car-rental contract on the basis of her race.  The court agrees with Plaintiff that she has produced sufficient evidence to raise a fact dispute on her Section 1981 claim as to Defendant Isaac's actions but not Defendant Sheppard's actions.

It is undisputed that Plaintiff is African American and that Defendant Isaac refused to enter a rental-car contract with Plaintiff.  Additionally, Plaintiff testified that Defendant Isaac employed a racially derogatory term when referring to her and her friend.  Although the facts and the inferences drawn therefrom may be in dispute, the court finds that Plaintiff has presented sufficient evidence to survive summary judgment on her Section 1981 claim against Defendant Checker[94] for the actions of Defendant Isaac.

The result, however, is not the same with regard to Defendant Sheppard's actions.  The evidence is uncontraverted that, by the time Defendant Sheppard arrived at the rental counter, Defendant Isaac had already refused to honor Plaintiff's reservation. Therefore, Defendant Sheppard could not have interfered with

---

[94]    Defendant Avis did not move for summary judgment on the merits of Plaintiff's Section 1981 claim but, rather, argued that liability cannot be imputed to it for Defendant Isaac's conduct.  The court address this issue in a subsequent section of this memorandum.

Plaintiff's opportunity to contract for a rental car. Defendant Sheppard did nothing more than inform Plaintiff that Defendant Isaac was refusing service and that she would need to return when a manager was present to complain about his conduct. Plaintiff confirmed this in an interrogatory response that focused on Defendant Isaac's "inhumane[]" treatment and humiliation of Plaintiff and his denial of a rental vehicle.[95] As to Defendant Sheppard, Plaintiff stated only that he arrived, was unable to deescalate the situation, and escorted Plaintiff out of the building.

The evidence is also lacking as to intentional discrimination by Defendant Sheppard. According to the evidence, nothing that Defendant Sheppard did or said revealed any racial animus. In fact, Plaintiff testified that she did not believe that Defendant Sheppard treated her differently based on her race.[96]

After considering all of the summary judgment evidence, the court finds that the record raises a fact issue on Plaintiff's Section 1981 claim against Defendant Checker for Defendant Isaac's actions but not against Defendant Easterwood for Defendant Sheppard's actions. Defendant Easterwood is entitled to summary judgment on the Section 1981 claim.

---

[95]    Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 5.

[96]    Doc. 106, Ex. I to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for Summ. J., Dep. of Pl. p. 131.

### 3.  Due Process and Equal Protection

The Fourteenth Amendment prohibits state actors from depriving individuals of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  The procedural protections include, at a minimum, notice and an opportunity to be heard in a meaningful time and manner.  Gibson v. Tex. Dep't of Ins.–Div. of Workers' Comp., 700 F.3d 227, 239 (5th Cir. 2012)(quoting Fuentes v. Shevin, 407 U.S. 67, 80 (1972)).  The analysis of a procedural due process claim has two steps: 1) whether a liberty or property interest exists with which the state has interfered; and 2) whether the procedures attendant upon the deprivation were constitutionally sufficient.  ODonnell v. Harris Cty., 892 F.3d 147, 157 (5th Cir. 2018)(quoting Meza v. Livingston, 607 F.3d 392, 399 (5th Cir. 2010)).  The constitutional guarantee of substantive due process prohibits arbitrary or conscience-shocking action by state actors.  See Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 867 (5th Cir. 2012)(quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)).

In order to state a claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff first must allege "that two or more classifications of similarly situated persons were treated differently" by a state actor.  Gallegos-Hernandez v. United States, 688 F.3d 190, 195 (5th Cir. 2012).  If successful, the court determines the appropriate level of scrutiny for the classification

made.  Id.

Plaintiff alleged that Defendants Isaac and Sheppard deprived
her of her rights to due process and equal protection.  Because, as
previously discussed, the Section 1983 claim against Defendant
Isaac should be dismissed as barred by the statute of limitations,
the court does not address Plaintiff's specific allegations against
him.  Regarding Defendant Sheppard, Plaintiff merely stated that
Defendant "Sheppard's actions constitute an abuse of power which
deprived [Plaintiff] of her right to due process and equal
protection of the law under the Fourth and Fourteenth
Amendments[.]"[97]  Just as Plaintiff failed to allege facts to
explain these constitutional violations, she failed to produce any
evidence in support of the allegations on summary judgment.  In
response to Defendants Easterwood and Sheppard's pending motion,
Plaintiff stated her claim in the following manner:

> Because [Plaintiff] had an equal right to be on public
> property[] and because she was detained and removed
> without lawful authority based on her race, there is a
> fact issue about whether Defendants violated
> [Plaintiff's] federal rights under the Due Process Clause
> and Equal Protection Clause of the Fourteenth
> Amendment.[98]

However, Plaintiff's brief fails to even mention the elements

---

[97]    Doc. 56, 3d Am. Compl. p. 9.

[98]    See Doc. 75, to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for
Final Summ. J. p. 10.  Plaintiff also adds the unpled allegation that Defendants
Easterwood and Sheppard violated Section 1983 by interfering with Plaintiff's
right to contract in violation of Section 1981.  In addition to not being
properly before the court as it was not pled, that theory is foreclosed by the
court's determination that no evidence supports the assertion that Defendant
Sheppard interfered with Plaintiff's right to contract.

of the alleged constitutional violations, much less to point to any evidence in support of those elements.   Accordingly, the court agrees with Defendant that Plaintiff has failed to produce any evidence that Defendant Sheppard violated any constitutional right.

More salient, no evidence suggests that he did.   Plaintiff's interrogatory responses allege only that Defendant Sheppard removed Plaintiff from the airport premises on instruction from Defendant Isaac.[99]   As the evidence discussed in the prior section on false imprisonment indicates, Defendant Sheppard's actions cannot be interpreted as *removing* Plaintiff from the airport premises.   When pressed at her deposition as to why Defendant Sheppard should pay any damages to Plaintiff, she said that she felt like he "should have called the authorities."[100]

Plaintiff's allegations and assertions are so vague that it is difficult to determine whether she intended a due process claim of the procedural or substantive variety.   Regardless, she neglects to point to evidence in support of any element of either.   The court finds no evidence to support a an inference that Plaintiff suffered a deprivation of her liberty or any other interest based on constitutionally insufficient procedures or to support an inference that Defendant Sheppard's actions were arbitrary or conscience

---

[99]     See Doc. 68-1, Ex. 1 to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Pl.'s Resps. to Def. Easterwood's 1st Set of Interrogs. p. 7.

[100]     Doc. 106, Ex. I to Pl.'s Resp. to Def. Avis' 1st Am. Mot. for Summ. J., Dep. of Pl. pp. 125, 126.

shocking.  Additionally, the court finds no evidence to support an inference that any person of another classification was treated differently than she was under similar circumstances.

After considering Plaintiff's utter failure to present any evidence in support of a violation of Plaintiff's due process and equal protection claims, the court finds the record fails to raise a fact issue as to any element of Plaintiff's constitutional claims.  Defendant Sheppard is entitled to summary judgment on Plaintiff's Section 1983 claim.

### 4.  Agency

An agency relationship is required for the imposition of Section 1981 liability on a defendant for the discriminatory acts of a third party.  Arguello v. Conoco, Inc., 207 F.3d 803, 807 (5th Cir. 2000).  "Agency . . . results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."  Id.  "To prove an agency relation under Texas law, there must be evidence from which the court could conclude that the alleged principal had the right to control both the means and the details of the process by which the alleged agent was to accomplish the task."  Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau, 258 F.3d 345, 351 (5th Cir. 2001)(quoting Karl Rove & Co. v. Thornburgh, 39 F.3d 1273, 1296 (5th Cir. 1994), superseded by statute on other grounds)(internal quotation and alteration marks

omitted).

In _Arguello_, the plaintiffs sued Conoco, Inc., alleging that they had experienced intentional discrimination while shopping at Conoco-branded stores.   _See Arguello_, 207 F.3d at 805-06.   On appeal, the plaintiffs argued that Petroleum Marketing Agreements ("PMAs"), which allowed the independently owned stores to market and sell Conoco-branded gasoline and supplies, established an agency relationship between Conoco, Inc., and the stores.   _Id._ at 807.

> They argue[d] that the PMAs g[a]ve Conoco, Inc.[,] control of the branded stores because the PMAs require[d] the branded stores to maintain their businesses according to the standards set forth in the PMAs.  [The] [p]laintiffs further contend[ed] that Conoco, Inc.[,] control[led] the customer service dimension of the Conoco-branded stores.  As evidence[,] the plaintiffs point[ed] to a statement in the PMA that instruct[ed] the branded stores that "all customers shall be treated fairly, honestly, and courteously."  Furthermore, the plaintiffs assert[ed] that Conoco, Inc.[,] ha[d] the power to debrand the Conoco-branded stations for not complying with the contractual terms of the PMA.  Thus, because of this debranding power[,] the plaintiffs reason[ed] that Conoco[, Inc.,] control[led] the operations of their brand marketers in all areas which [we]re discussed in the PMA, including customer service. The plaintiffs also produced summary judgment evidence that Conoco, Inc.[,] conduct[ed] random, biyearly inspections of the branded stores to determine if business [wa]s being conducted in accordance with the standards of the PMA.

_Id._  However, the PMAs also explicitly stated that the stores were independent and their employees were not employees of Conoco, Inc. _Id._ at 807-08.  The PMAs further disclaimed that each store and Conoco, Inc., were partners or agents of each other.   _Id._ at 808.

The court found no agency relationship, stating, "The language of the PMA, while offering guidelines to the Conoco-branded stores, d[id] not establish that Conoco, Inc.[,] ha[d] any participation in the daily operations of the branded stores [or] that Conoco, Inc.[,] participate[d] in making personnel decisions." Id.; see also Causey, 394 F.3d at 290 (finding no agency relationship between General Motors Corporation ("GM") and a GM dealership because the dealership was an independent business and GM did not control its daily operations).

Plaintiff alleged that Defendant Avis, in addition to Defendant Checker, was liable for Defendant Isaac's conduct as Defendant Avis' employee. The only competent summary judgment evidence on this issue affirms that Defendant Isaac is not Defendant Avis' employee.[101] In her response to Defendant Avis' motion for summary judgment, however, Plaintiff argues that Defendant Avis is liable pursuant to an agency theory.

The evidence in this case, similar to the evidence in Arguello and Causey, does not show that Defendant Avis controlled, or had the right to control, both the means and the details of Defendant Checker's accomplishment of daily operations or that it participated in making personnel decisions. In fact, the evidence establishes that Defendant Avis played no role in Defendant Checker's daily operations or in employing Defendant Isaac. Plus,

---

[101] See Doc. 105-4, Ex. D to Def. Avis' 1st Am. Mot. for Summ. J., Aff. of Brown p. 3.

the licensing agreement specifically disclaimed any agency relationship between Defendant Avis and Defendant Checker.

After considering all of the evidence, the court finds the record fails to raise a fact issue on agency, which, as a matter of law, precludes the imputing of liability for any Section 1981 violation to Defendant Avis.  Defendant Avis is entitled to summary judgment on Plaintiff's Section 1981 claim.

### 5.  Damages

Pursuant to Rule 26(a)(1)(A)(iii), (a)(2)(E), a plaintiff is required to include a computation of each category of damages claimed in initial disclosures and to supplement incomplete responses to interrogatories.  <u>See</u> Fed. R. Civ. P. 26(a)(1)(A)(iii), (a)(2)(E).  In this case, Plaintiff did neither. Rule 37(c) states that a party who fails to provide information required by Rule 26 "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Defendants Easterwood and Sheppard object to Plaintiff's affidavit and move the court to strike it because, they argue, it presents previously undisclosed details about her encounter with Defendant Sheppard and about her alleged damages.  They contend that she failed to comply with the rules of discovery and should not be allowed to use the new information in her affidavit to

35

combat the pending motions.  While the court agrees that Plaintiff plainly violated Rule 26, the nature of the additional details in the affidavit, along with the opportunity for Defendants to question Plaintiff about them at her subsequent deposition mitigate the harm.  Therefore, the court finds it unnecessary to strike Plaintiff's affidavit or any information therein.

With regard to the newly asserted information on damages, Defendants Easterwood argue that Plaintiff cannot prevail on her claims against it absent any evidence of damages.  However, taking Plaintiff's affidavit into consideration, the evidence is not completely devoid of damage evidence.  In her affidavit, Plaintiff described the effects of the incident on her mental condition:

> To this day, [Defendant] Isaac's behavior toward me burns in my memory and affects my daily life.  Every time I think about the incident, I relive the fear, shock, and disbelief that I felt that night, and it often brings me tears. [Defendant] Isaac's threatening behavior toward me sent me into immediate shock and confusion.  I felt defenseless, and [Defendant] Isaac humiliated me because he made me feel afraid and helpless.  Additionally, [Defendant] Sheppard's decision . . . to escort me out of the airport while [Defendant] Isaac hurled racial insults at me instead of doing something about [Defendant] Isaac caused me to feel additional anger and helplessness.  Sometimes I think I am okay, but every time I think about the incident, I feel intense anger and nervous anxiety.  Ever since these events, I have decline to rent a car when I otherwise would have. . . .  I am also an evangelist minister through my church[] and have been active in ministry to people in jail, in nursing homes, and in my church.  However, this incident has caused me to be a more nervous and defensive person at times, and the anxiety that I have suffered has caused me to step back from some of my ministries because I was no longer able to engage in them in the same way, as my anxiety sometimes causes me to be timid or less vocal when I

should speak up.  I still fear and have to pray through the anger that this has caused me.  When conflict or confrontation with other people arises in my ministry, I relive the experience with [Defendant] Isaac, which causes further anxiety, fear, and feelings of helplessness.  I still have trouble sleeping when I relive these events, and the experience has caused a lot of fear and anxiety that I have to deal with on a regular basis in my interactions with other people.[102]

Plaintiff admitted that she needed mental health treatment but had not received any due to providers' unwillingness to treat her "out of a fear that the related incident might be involved in litigation."[103]

The effect of Plaintiff's failure in discovery to provide computations of her alleged damages or to disclose a damages expert is that Plaintiff is limited to the damages available to her based solely on her own testimony.  The court declines to address this issue any further as it is not raised in the pending motions.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that: (1) Defendants Easterwood and Sheppard's Motion for Summary Judgment be **GRANTED**; (2) Defendant Isaac's Motion to Dismiss Plaintiff's Third Amended Complaint be **GRANTED**; (3) Defendant Checker's First Amended Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART**; and (4) Defendant Avis' First Amended Motion for Summary Judgment

---

[102]    Doc. 75-1, Ex. A to Pl.'s Resp. to Defs. Easterwood & Sheppard's Mot. for Final Summ. J., Aff. of Pl. pp. 2-3 (unnumbered).

[103]    Id. p. 3.

be **GRANTED**.   Accordingly, the only claim remaining to be resolved at trial is Plaintiff's Section 1981 claim against Defendant Checker based on the conduct of its employee Defendant Isaac.   The court will consider the damages issue if raised in a timely filed motion in limine.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of February, 2020.

Nancy K. Johnson
United States Magistrate Judge